UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EUGENE KENNETH JONES-EL,⁣ )
⁣ )
⁣⁣⁣Petitioner, )
⁣ )
⁣⁣⁣v. )⁣⁣⁣⁣⁣⁣⁣ No. 4:13-CV-85-SPM
⁣ )
IAN WALLACE, )
⁣ )
⁣⁣⁣Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Eugene Kenneth Jones-El's[1] ("Petitioner's") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 8). For the following reasons, the petition will be denied.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2001, the State charged Petitioner with robbery in the first degree, armed criminal action, and unlawful use of a weapon (exhibiting), based on an incident in which Petitioner was part of a group of four people that pulled a gun on a woman, took money from her, and waved a gun at another individual. Resp't Ex. B. Petitioner was tried before a jury, was convicted of all three offenses, and was sentenced to 20 years for robbery, 5 years for armed criminal action, and 5 years for unlawful use of a weapon, with the sentences to run consecutively. Resp't Ex. C. In February 2011, the Eighth Circuit affirmed the federal district court's issuance of a conditional writ of habeas corpus vacating Petitioner's convictions based on the state court's violation of

---

[1] The Court notes that state court documents reflect that Petitioner's last name is Jones.

Petitioner's right to represent himself. *Jones v. Norman*, 633 F.3d 661 (8th Cir. 2011). The Eighth Circuit required the State to give Petitioner a new trial. *Id.*

When Petitioner's case was returned to state court, he was represented by Mary Fox of the Missouri State Public Defender between May 5, 2011, and July 11, 2011. However, on July 11, 2011, Petitioner waived his right to counsel, and Ms. Fox withdrew. Resp't Ex. A, G, H, & J. The trial court initially appointed Ms. Fox as standby counsel but later granted her motion to withdraw as standby counsel. Resp't Ex. I, K, & N.

On July 14 and 29, 2011, Petitioner filed motions asking for funding for depositions, investigative services, expert assistance, and other preparatory services. Resp't Ex. L & O; Doc. 17-2, at 3. The trial court denied that request in light of the availability of the prior trial transcript. *See* Doc. 17-2, at 5. The case was set for trial on August 1, 2011. Resp't Ex. A. On August 1, Petitioner entered an *Alford* plea of guilty to robbery in the first degree, armed criminal action, and unlawful use of a weapon Resp't Ex. A, S, Y, & Z. Petitioner was sentenced to 25 years for robbery, 3 years for armed criminal action, and 4 years for unlawful use of a weapon, with the sentences to run concurrently. Resp't Ex. Z.

On December 15, 2011, again acting *pro se*, Petitioner filed a motion for post-conviction relief. Resp't Ex. HH. He raised thirteen claims, designated Grounds A through M. *Id.* The motion court denied each of his claims on the merits. Resp't Ex. FF & HH. On June 28, 2012, Petitioner filed a notice of appeal. Resp't Ex. KK. On August 6, 2012, the Missouri Court of Appeals informed Petitioner that he needed to file the record on appeal by August 10, 2012. Resp't Ex. LL. Petitioner sought and obtained two extensions of time to file the record on appeal, which expired October 9, 2012. Resp't Ex. MM, OO, & PP. The record shows that between June and September 2012, Petitioner sent multiple letters and filed multiple motions in the plea court

requesting that the plea court provide him with a copy of the record on appeal. Resp't Ex. JJ. Although he received a partial record, he never received a full record. *Id.* After the expiration of his deadline on October 9, 2012, Petitioner took no further action, and on November 9, 2012, the Missouri Court of Appeals dismissed Petitioner's case for failure to comply with Missouri Supreme Court rules requiring the filing of a record on appeal. Resp't Ex. QQ & RR.

On January 14, 2013, Petitioner filed his *pro se* petition in the instant action. Reading the petition and attachments to the petition broadly, Petitioner appears to be asserting fourteen claims: the thirteen claims he raised in his *pro se* motion for post-conviction relief (designated Grounds A through M), and another claim he designates "Ground 14." Doc. 1 at 19-80; Doc. 1-1, at 1-10 & 94-95.[2]

## II. LEGAL STANDARD

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

---

[2] Petitioner also attached to his Petition what appears to be a draft brief appealing the denial of his motion for post-conviction relief, which contains twelve claims (designated Points 1 through 12). Doc. 1-1, at 12-93. However, those claims are duplicates of the claims in Grounds A through K and Ground M and need not be considered separately.

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

### A. Procedural Default

Respondent first argues that this Court should not consider any of Petitioner's claims, because they have all been procedurally defaulted. The Court will consider the procedural default issue separately for Grounds A through M and Ground 14.

### 1. Grounds A through M

Respondent argues that Ground A through M have been procedurally defaulted, because although Petitioner attempted to raise them in the appeal from the denial of his motion for post-conviction relief, the Missouri Court of Appeals dismissed that appeal on state procedural grounds. The Court agrees.

Federal courts may generally not grant habeas relief where a prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 50 (1991). *See also Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009) ("Federal courts may not grant habeas relief based on procedurally defaulted claims if the state court's reason for finding default rests on adequate and independent state grounds."); *Collier v. Norris*, 485 F.3d 415, 425 (8th Cir. 2007) (the adequate and independent state law doctrine "'applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'") (quoting *Coleman*, 501 U.S. at 729-30). To be adequate and independent, "[t]he procedural rule relied upon by the state court must be 'firmly established, regularly followed and readily ascertainable when it was applied.'" *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006) (quoting *Malone v. Vasquez*, 138 F.3d. 711, 717 (8th Cir. 1998)).

There is no dispute here that the state court declined to address Petitioner's claims in Grounds A through M based on Petitioner's failure to follow state procedural requirements. In its ruling, the Missouri Court of Appeals clearly stated that it was dismissing these claims due to Petitioner's failure to comply with Missouri Supreme Court rules requiring the appellant to cause the record on appeal to be prepared and filed with the clerk of the proper appellate court. *See* Resp't Ex. QQ & RR (citing Mo. Sup. Ct. R. 81.12(d), 81.18, & 84.08); Mo. Sup. Ct. R. 81.12(d)

("Within the time prescribed by Rule 81.19, the appellant shall cause the record on appeal to be prepared in accordance with the provisions of this Rule 81 and to be filed with the clerk of the proper appellate court . . ."). Petitioner does not dispute that this rule is firmly established, is regularly followed, and was readily ascertainable when applied. *See Garris v. State*, 389 S.W.3d 648, 652 (Mo. 2012) ("[I]t is appellant's obligation to prepare and file a record on appeal that incorporates the proceedings showing that the motion court erred") (internal quotation marks omitted); *State v. Dunn,* 817 S.W.2d 241, 244 (Mo. 1991) ("It is appellant's responsibility to prepare a complete record on appeal."). *See also Lynn v. Lombardi*, No. 4:14 CV 428 CDP, 2015 WL 7180500, at *3 (E.D. Mo. Nov. 16, 2015) (finding procedural default where Missouri Court of Appeals dismissed claims based on failure to comply with Missouri Supreme Court Rule 81.12).

The federal habeas court will not consider a claim that was defaulted pursuant to an independent and adequate state procedural rule unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *Accord Collier*, 485 F.3d at 425. To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively

demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

Petitioner argues that he can show cause for the procedural default, because interference by state officials made it impracticable for him to comply with the relevant state procedural rules.[3] *See Coleman*, 501 U.S. at 753 (noting that "a showing that . . . some interference by officials . . . made compliance [with a state procedural rule] impracticable" is an example of something that would constitute cause to excuse a procedural default) (quotation marks omitted).

Petitioner first asserts that cause exists because the prison refused to provide him with a typewriter and the Missouri Court of Appeals denied his motion to submit a handwritten brief. However, this argument is without merit, because Petitioner's inability to file a typewritten brief was not the "cause" of his procedural default. Instead, his default was caused by his failure to file the record on appeal.

Petitioner next asserts that cause exists because the state plea court failed to provide him with a complete copy of the state court record he needed to file the record on appeal. The record shows that Petitioner sent several requests to the plea court requesting that the plea court provide him with a record on appeal, and he included specific requests for specific documents. Resp't Ex. JJ. He then received a partial record that did not include any hearing transcripts or the sentencing transcript. *Id.* He subsequently sent two additional letters to the clerk and filed a motion with the plea court, pointing out the missing portions of the legal file and requesting a complete record. *Id.* In these, he cited Mo. Sup. Ct. Rule 24.035(k), which requires that the clerk of court furnish for indigent persons "a record of all proceedings for appellate review," and he requested the missing documents. *Id.* There was apparently no response to those letters or motions.

---

[3] Petitioner does not argue that the fundamental miscarriage of justice exception applies.

Respondent acknowledges that there were "some problems with the records," Doc. 11 at 13, and he makes no attempt to explain or justify the plea court's failure to provide Petitioner with the requested records. However, Respondent argues that the procedural default was not caused by the plea court's failure to provide a record, but rather by Petitioner's failure to address these problems with the Missouri Court of Appeals. While Petitioner was requesting the record on appeal from the plea court, Petitioner requested and received two extensions of time from the Missouri Court of Appeals. Respondent argues that Petitioner could have avoided the procedural default by filing a partial record with the Missouri Court of Appeals and then requesting to be permitted to supplement that record or moving that the Missouri Court of Appeals order a supplemental record to be prepared by the clerk of the trial court. *See* Mo. Sup. Ct. Rule 81.12(f) (providing "[i]f anything material is omitted from the record on appeal, . . . the appellate court, on a proper suggestion or of its own initiative, shall direct that the omission . . . be corrected. The appellate court may, if it deems necessary, order that a supplemental record be prepared and filed . . . by the clerk of the trial court including any additional part of the trial record, proceedings, and evidence . . . .").

Although the Court is troubled by the state plea court's unexplained failure to provide Petitioner with a record on appeal, the Court agrees with Respondent that Petitioner has failed to show adequate cause to excuse the procedural default here. The applicable Missouri rules show that Petitioner could have taken steps to address the issue of the incomplete record with the Missouri Court of Appeals, yet he failed to do so. Although the Court recognizes that Petitioner was proceeding *pro se* and may not have been aware of this option, it is well established that a Petitioner's *pro se* status cannot constitute cause to excuse a procedural default. *See Stanley v.*

*Lockhart,* 941 F.2d 707, 710 (8th Cir. 1991); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988).

For all of the above reasons, the Court finds that Grounds A through M are procedurally defaulted and should be denied. Moreover, as discussed below, even assuming that Petitioner could overcome the procedural default of Grounds A through M, his claims would be denied on the merits.

## 2. Ground 14

Ground 14 was not presented in Petitioner's initial post-conviction motion and was never presented to any state court. Thus, the claim is procedurally defaulted and can be addressed only if Petitioner shows cause and prejudice or that a fundamental miscarriage of justice would result from the failure to address the claim. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) ("Claims in a federal habeas petition not presented in the state court proceedings and for which there is no remaining state court remedy are defaulted, and a habeas petitioner's default will be excused only if he shows cause and prejudice for the default or a miscarriage of justice."). Petitioner provides no argument or evidence supporting a finding of cause and prejudice, nor does he argue that a fundamental miscarriage of justice would result from the failure to address this claim. Thus, review of Ground 14 is procedurally barred. Moreover, as discussed below, Ground 14 is based on an alleged error of state law and is not cognizable on federal habeas review.

**B. Merits Analysis**

    **1. Grounds A, C, and D: Double Jeopardy Violations**

In Grounds A, C, and D, Petitioner asserts that his convictions and sentences for the three offenses at issue here violated the Double Jeopardy Clause because they were all based on the same conduct.

    *a. Ground A*

In Ground A, Petitioner appears to be arguing that his convictions and sentences for armed criminal action and robbery in the first degree constituted a double jeopardy violation.[4] The motion court found this claim to be without merit.

"[T]he Fifth Amendment's Double Jeopardy Clause provides a criminal defendant with three protections." *Dodge v. Robinson*, 625 F.3d 1014, 1017 (8th Cir. 2010) (citing *Bally v. Kemna*, 65 F.3d 104, 106 (8th Cir. 1995)). "The first two guard against successive prosecution, either after an acquittal or after a conviction." *Id.* (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). The third, which is at issue here, protects against cumulative punishment. *Id.* "'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.* (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Thus, the third double jeopardy protection "turns on legislative intent." *Id.*

In light of the above, the relevant question here is whether the Missouri legislature intended to impose cumulative punishment for both robbery in the first degree and armed criminal action. Robbery in the first degree is a class A felony, Mo. Rev. Stat. § 569.020, and

---

[4] The differences between Grounds A, C, and D are not entirely clear from the petition. To the extent that Petitioner is also arguing in Ground A that other combinations of these offenses constituted a double jeopardy violation, that argument is addressed in subsequent claims.

"[t]he authorized term[] of imprisonment, including both prison and conditional release terms, [is] . . . a term of years not less than ten years and not to exceed thirty years, or life imprisonment." *Id.* § 558.011.1(1). The armed criminal action statute under which Petitioner was convicted states as follows:

> Except as provided in subsection 4 of this section,[5] any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years. **The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon** . . . .

*Id.* § 571.015.1 (emphasis added).

The United States Supreme Court has addressed precisely the question presented here and has found that a substantively identical version of this armed criminal action statute did authorize cumulative punishment for first degree robbery and armed criminal action. *Hunter*, 459 U.S. at 362, 368-69 (citing Mo. Rev. Stat. § 559.225 (1979)).[6] Based on that finding, the Court in *Hunter* concluded that there was no double jeopardy violation where a defendant was convicted under Missouri law of both armed criminal action and robbery in the first degree. *Id.* at 368-69.

---

[5] The underlying felony at issue in this case, robbery in the first degree, is not mentioned in Section 4. *See State ex. rel. Green v. Moore*, 131 S.W.3d 803, 807 &  n.9 (Mo. 2010) (noting that these felonies have been renumbered and recodified since 571.015 was enacted in 1977 and explaining the five felonies covered by Section 4).

[6] The armed criminal action statute at issue in *Hunter* provided:

> "[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. **The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon**."

*Hunter*, 459 U.S. at 362 (quoting Mo. Rev. Stat. § 559.225 (1975) (emphasis added).

The Court stated, "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id*.

Here, as in *Hunter*, it is clear that the Missouri legislature intended punishment for armed criminal action to be cumulative with ("in addition to") punishment for the underlying felony, so there is no double jeopardy violation. Petitioner appears to argue that *Hunter* was wrongly decided. However, this Court is not in a position to disregard or overturn existing United Supreme Court precedent.

Petitioner also appears to argue that Missouri's general cumulative punishment statute, Mo. Rev. Stat. § 556.041, applies here. Petitioner's argument is without merit. Where, as here, the specific statutes governing punishment for the offenses at issue make it clear that the legislature intended cumulative punishment, the court's general cumulative punishment statute does not apply. *See Williams v. Dwyer*, No. 4:05CV00040ERW, 2008 WL 346348, at *5 (E.D. Mo. Feb. 6, 2008) (section 556.041 was inapplicable because the Missouri legislature "specifically authorized cumulative punishment under the first degree robbery and armed criminal action statutes"); *State v. Davis*, 849 S.W.2d 34, 42 (Mo. Ct. App. 1993) (court only looks to general cumulative punishment statute if statutes under which the defendant was convicted do not indicate whether the legislature intended cumulative punishment).

In sum, in light of the Supreme Court's holding in *Hunter*, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground A will be denied.

*b. Grounds C and D*

In Grounds C and D, Petitioner asserts that his convictions and sentences violate the Double Jeopardy Clause, because all three of his offenses were based on the same conduct. The motion court considered these claims and found them to be without merit.

To the extent that Petitioner is revisiting his assertion that his convictions and sentences for armed criminal action and robbery first degree violate the Double Jeopardy Clause, that argument is without merit for the reasons stated in the discussion of Ground A.

Petitioner also argues that his cumulative punishments for robbery and unlawful use of a weapon (exhibiting) violate the Double Jeopardy Clause because they are based on the same conduct. As the motion court pointed out, and as Petitioner acknowledges, the unlawful use of weapon (exhibiting) charge actually involved Petitioner pointing a gun at one or more persons other than the victim mentioned in the robbery charge. *See* Doc. 1, at 80; Ex. HH at 7. Considering those facts, the motion court reasonably found that there was no double jeopardy issue because the offenses involved two different acts committed against two different victims. *See* Ex. HH at 7.

Moreover, even if the two offenses had involved the same victims, Petitioner's double jeopardy argument would be without merit. The United States Supreme Court has rejected the "same conduct" analysis for purposes of analyzing double jeopardy claims. *United States v. Dixon*, 509 U.S. 688, 703-04 (1993). As discussed above, it is permissible for a defendant to be convicted and sentenced for multiple offenses based on the same conduct, provided that the legislature intended separate punishment for the offenses. The specific statutes at issue here do not specify whether the legislature intended that punishment be cumulative, so the Court looks next to Missouri's general cumulative punishment statute, Mo. Rev. Stat. § 556.041, to

determine the legislature's intent. Petitioner argues that subsection (1) of that statute bars cumulative punishment here because unlawful use of a weapon (exhibiting) is "included in" the offense of robbery. That argument is without merit. Subsection (1) states that a person may not be convicted of more than one offense where "[o]ne offense is included in the other, as defined in section 556.046." *Id.* § 556.041(1). Section 556.046 provides, in relevant part, that an offense is included in an offense charged when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* § 556.046. Here, unlawful use of a weapon (exhibiting) requires that an actual weapon be exhibited in an "angry or threatening manner." *Id.* § 571.030.1(4). First degree robbery does not; it merely requires the display of "what appears to be a deadly weapon." *Id.* § 569.020. Thus, unlawful use of a weapon (exhibiting) is not included in first degree robbery, because it is not established by proof of the same or less than all the facts required to establish the commission of first degree robbery. Similarly, first degree robbery is not included in unlawful use of a deadly weapon (exhibiting), because first degree robbery requires proof of a forcible theft and unlawful use of a deadly weapon (exhibiting) does not. *Id.* §§ 569.020 & 571.030.1(4). Because each of these offenses requires proof of different facts, Missouri's general cumulative punishment statute does not apply to prohibit cumulative punishment.

Where legislative intent is unclear, the Court uses the analysis articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether there was an intent to authorize multiple punishments. *See United States v. Anderson*, 783 F.3d 727, 739 (8th Cir. 2015). "Under *Blockburger*, if each offense requires proof of an element not required by the other, the crimes are not considered the same, and a double jeopardy challenge necessarily fails." *United States v. Gamboa*, 439 F.3d 796, 809 (8th Cir. 2006) (quotation marks omitted). As discussed above,

robbery in the first degree and unlawful use of a weapon (exhibiting) each require proof of an element the other does not. Thus, Petitioner' double jeopardy challenge fails.

Petitioner also argues that his convictions and sentences for armed criminal action and unlawful use of a weapon (exhibiting) violate the Double Jeopardy Clause, citing *Blockburger* and Missouri's general cumulative punishment statute, Mo. Rev. Stat. § 556.041. That argument is also without merit. Under Missouri law, "Where . . . the armed criminal action conviction rests on some offense other than the unlawful use of a weapon, [7] conviction and punishment in the same trial of both armed criminal action and unlawful use of a weapon for the same conduct does not offend general cumulative punishment section 556.041 or the principle of double jeopardy." *State v. Madison*, 997 S.W.2d 16, 21 (Mo. 1999) (quoting *Davis*, 849 S.W.2d at 44). Here, the armed criminal action conviction rested on the underlying felony of robbery, not the unlawful use of a weapon (exhibiting) offense. Moreover, each offense includes an element the other does not, with armed criminal action requiring the commission of an underlying felony other than unlawful use of a weapon (exhibiting), and unlawful use of a weapon (exhibiting) requiring the defendant to have exhibited a weapon in an "angry or threatening manner." Thus, under *Blockburger*, there is no double jeopardy violation.

For all of the above reasons, the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Grounds C and D will be denied.

---

[7] Unlawful use of a weapon (exhibiting) is one of the felonies specifically designated as one that cannot serve as the underlying felony for a charge of armed criminal action. *See* Mo. Rev. Stat. § 571.015.1; *Moore*, 131 S.W.3d at 807 & n.9 (Mo. 2010).

## 2. Ground B: Violation of Right to Standby Counsel and Right to Funding for Investigation

In Ground B, Petitioner argues that the trial court violated his Sixth Amendment rights by not appointing standby counsel after his original standby counsel withdrew and by not providing him with funds to develop his defense. Petitioner argues that this placed him under duress by forcing him to waive his right to trial and to instead seek a guilty plea. The motion court considered this claim and rejected it on the merits.

Petitioner's first argument with respect to this claim—that the trial court violated his Sixth Amendment rights by refusing to appoint standby counsel for him—is without merit. A court "*may* appoint standby counsel to assist a defendant who chooses to proceed *pro se*." *United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) (emphasis added) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984)). However, the Supreme Court has not recognized a constitutional right to standby counsel. *See United States v. Keiser*, 578 F.3d 897, 903 (8th Cir. 2009) ("We have rejected the notion that the Sixth Amendment guarantees a defendant an absolute right to standby counsel."); *United States v. Foster*, 230 F.3d 1364 (8th Cir. 2000) (per curiam) (noting that a defendant "had no constitutional right to standby counsel"). Because Petitioner has not identified any constitutional right that was violated by the trial court's refusal to appoint standby counsel for him after he waived his right to representation, this aspect of Ground B is without merit.

Petitioner's second argument is that his Sixth Amendment rights were violated because he was not given funding to prepare his defense. He relies on *Ake v. Oklahoma*, 470 U.S. 68 (1985). In *Ake*, a capital case involving an insanity defense, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a

competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83. The Court reasoned that the individual's interest in the accuracy of the proceeding was high, the financial burden to the state was minimal because the right recognized was limited to the provision of one competent psychiatrist, and the risk of an inaccurate resolution of sanity issues in the absence of the expert assistance was "extremely high." *Id.* at 78-83. The Eighth Circuit has since held that the *Ake* rule is not limited to capital cases or to psychiatric experts. It has found that to establish an *Ake* violation, "the defendant must show a reasonable probability that an expert would aid his defense, and that denial of expert assistance would result in an unfair trial." *Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir. 1987). *Accord United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009).

Petitioner cannot show that the trial court violated his rights under *Ake*. This is not a case in which Petitioner demonstrated a specific need for a specific type of expert to help Petitioner to present his defense. Instead, Petitioner asserted only generally that he needed "funding for depositions, investigative services, expert assistance, and other preparatory services" and that the funding was "extremely necessary." Resp't Ex. L, O. There is no general constitutional right for a criminal defendant to conduct discovery, *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and Petitioner offers no authority for his suggestion that *Ake* or any other Supreme Court case establishes a constitutional right to general funding for purposes of conducting discovery or general investigation. Moreover, even if *Ake* were applicable here, Petitioner cannot show either a reasonable probability that the funding he sought would have aided his defense or that the denial of funding resulted in unfair plea proceedings, particularly given that Petitioner's counsel from his first trial had already conducted depositions and Petitioner had access to witness testimony from the first trial. *See* Pet'n., Doc. 1, at 43-44.

For all of the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground B will be denied.

### 3. Grounds E, G, and H: Ineffective Assistance of Trial Counsel

In these claims, Petitioner asserts that his Sixth Amendment Rights were violated because his trial counsel, Mary Fox, was ineffective.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To satisfy the prejudice requirement in the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

*a. Ground E: Ineffective Assistance of Trial Counsel (General)*

In Ground E, Petitioner argues that before he discharged Mary Fox as his trial counsel, she failed to competently represent him in various ways. The motion court considered this claim and denied it on the merits.

To the extent that Petitioner is objecting to Ms. Fox's actions after he waived his right to counsel, when Ms. Fox was acting as his standby counsel, such a claim is without merit, because there is no constitutional right to effective assistance of standby counsel. *See Foster*, 230 F.3d at 1364 (noting that a defendant "had no constitutional right to standby counsel"); *Barnes v. Dormire*, No. 4:10CV0443 JAR, 2013 WL 530907, at *4 (petitioner could not establish a *Strickland* violation by standby counsel because there is no constitutional right to standby counsel); *United States v. Arafat*, No. 12-CR-45 (SRN/JJG), 2014 WL 457906, at *3 (D. Minn. Feb. 4, 2014) ("[H]aving chosen to represent himself, Defendant cannot rely on an assertion that his standby counsel is inadequate, because Defendant has no constitutional right to standby counsel.").

Thus, this claim concerns only Ms. Fox's performance between May 5, 2011, when she entered as counsel of record, and July 11, 2011, when Petitioner waived his right to counsel and Ms. Fox withdrew. Petitioner suggests that during this time, Ms. Fox was ineffective for failing to file pretrial motions; failing to investigate, interview, and depose anyone; and deliberately refusing to present photo spreads of Petitioner to state witnesses or to have a live line-up conducted.

Petitioner cannot satisfy either prong of *Strickland* here. Ms. Fox represented Petitioner for only a short period of time before Petitioner requested to represent himself and she withdrew. Although Petitioner identifies some actions Ms. Fox could have taken during that time period, he

fails to show how her decision not to take those actions during that time period constituted deficient performance under *Strickland*. With regard to discovery, Ms. Fox had access to depositions and testimony of witnesses from the first trial, and it is not apparent that she would have needed to conduct a second round of depositions. With regard to motions not filed, Petitioner has not shown that Ms. Fox failed to file any motions that were required to be filed during the relevant time period, as opposed to motions that could have been filed after Petitioner began representing himself. The Court also notes that Ms. Fox did file a request for discovery during the relevant time period, as well as a motion to release Petitioner from custody and dismiss the charges against him. *See* Resp't Ex. A. Moreover, when Petitioner moved to represent himself, he did not indicate that he was doing so because of any specific errors by Ms. Fox. In sum, the record does not indicate that Ms. Fox "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687

Petitioner also cannot show prejudice, because he cannot show that absent Ms. Fox's alleged errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Petitioner elected to represent himself, and he has not shown any alleged error made by Ms. Fox before Petitioner began representing himself impaired his ability to decide whether to plead guilty.

For all of the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground E will be denied.

*b. Ground G: Ineffective Assistance of Trial Counsel (Handling of Deadline for New Trial)*

In Ground G, Petitioner argues that his trial counsel, Mary Fox, was ineffective because she reminded the state prosecutor about the 90-day deadline in which the State had to commence a new trial. The motion court found this claim without merit.

On June 15, 2015, Ms. Fox filed a motion to release Petitioner from custody and dismiss the charges against Petitioner. She took the position that the September 29, 2009 federal district court order granting Petitioner's first habeas petition had become final on March 9, 2011, the date the United States Court of Appeals had issued its mandate; that the district court's 90-day deadline for a new trial had passed; and that the State was obligated to release Petitioner from custody. Resp't Ex. D. The State took issue with Ms. Fox's calculations and argued that it had until August 15, 2011, to begin a new trial. Resp't Ex. E. On June 30, 2011, the state court denied Ms. Fox's motion. Resp't Ex. F.

Petitioner suggests that Ms. Fox deliberately and knowingly filed an "incorrect" and "premature" motion in June 2011, despite knowing that the State had until August 15, 2011 in which to commence a new trial. He suggests that by filing this motion and by discussing this issue with the prosecutor, she was reminding the prosecutor of the deadline for commencing a new trial. Petitioner alleges that Ms. Fox did this because of her dislike of the fact that Petitioner did not want to be represented by the public defenders' office. Petitioner argues that this prejudiced him because it destroyed his opportunity to be released based on the State's failure to commence his trial by the applicable deadline.

This claim is completely without merit. First, there is nothing in the record to suggest that Ms. Fox's filing of this motion constituted deficient performance under *Strickland*'s deferential standards. The motion reflects a colorable belief on the part of trial counsel that the time for a

new trial had expired and that Petitioner was entitled to be released, and filing it was a reasonable strategy, even if it was unsuccessful. *See Shaw v. United States*, 24 F.3d 1040, 1042 (8th Cir. 1994) ("'[T]rial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful.'" (quoting *Flieger v. Delo*, 16 F.3d 878, 885-86 (8th Cir. 1994)). Petitioner offers no evidence for his suggestion that Ms. Fox submitted the motion based on a dislike of Petitioner. Moreover, Petitioner cannot show that the filing of this motion prejudiced him in any way, because there is nothing in the record to suggest that the State was unaware of the deadline contained in the district court's order before Ms. Fox filed the motion or that absent the filing of the motion, the State would not have commenced a trial by August 15, 2011.

For all of the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground G will be denied.

### c. *Ground H: Ineffective Assistance of Trial Counsel (Refusal to Act as Standby Counsel)*

In Ground H, Petitioner argues that Ms. Fox denied him ineffective assistance of counsel when she moved to withdraw as standby counsel and refused to render him any assistance as standby counsel. The motion court denied this claim on the merits.

As discussed above, the Supreme Court has not recognized a constitutional right to standby counsel, and therefore Petitioner cannot prevail on any claim of ineffective assistance based on Ms. Fox's performance as standby counsel. *See Foster*, 230 F.3d 1364; *Barnes*, 2013 WL 530907, at *4; *Arafat*, 2014 WL 457906, at *3. Thus, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and Ground H will be denied.

### 4. Ground F: Vindictive Sentencing

In Ground F, Petitioner alleges that the judge who sentenced him after his guilty plea acted with unconstitutional vindictiveness because he imposed a sentence for Petitioner's robbery conviction that was more severe than the sentence Petitioner had received for his robbery conviction following his earlier trial. The motion court considered this claim and rejected it on the merits.

Petitioner's claim is based on *North Carolina v. Pearce*, in which the Supreme Court held that the imposition of a more severe sentence following retrial or resentencing that was motivated by vindictiveness on the part of a sentencing judge was a significant violation of a defendant's due process rights. 395 U.S. 711, 725 (1969). The Court found that a presumption of vindictiveness arises when a court imposes a more severe sentence on a defendant after a new trial. *Id.*[8]

Petitioner's claim is without merit, because (as the motion court found) his second sentence was not more severe than his first sentence. The Eighth Circuit has held that where a defendant has been convicted of multiple counts, the court looks to the length of the aggregate sentence imposed to determine whether the new sentence is more severe than the earlier one. *United States v. Evans*, 314 F.3d 329, 334 (8th Cir. 2002) (no presumption of vindictiveness where sentence on some counts was more severe, but the total sentence length remained the same). After the first trial, Petitioner was sentenced to 20 years for Count I (robbery in the first degree), 5 years for Count II (armed criminal action), and 5 years for Counts III (unlawful use of a weapon), with each sentence to run consecutively—a sentence of 30 years total. Resp't Ex. C. After Petitioner's case was remanded and Petitioner pleaded guilty, a different judge sentenced

---

[8] The Supreme Court limited the applicability of this presumption in a later case. *Alabama v. Smith*, 490 U.S. 794 (1989).

Petitioner to 25 years on Count I, 3 years on Count II, and 4 years on Count III, with all sentences to run concurrently—a sentence of 25 years in total. Although Petitioner's second robbery sentence was higher than his first robbery sentence, his aggregate sentence was less severe. Thus, no presumption of vindictiveness arose.

Petitioner also asserts that there is evidence of actual vindictiveness, because it is clear that the trial judge had "hatred" toward him for his success on appeal. However, Petitioner offers no evidence in the record that supports that contention.

For all of the above reasons, the motion court's denial of this claim was not contrary to, or an unreasonable application of, federal law, and Ground F will be denied.

### 5. Ground I: Grossly Disproportionate and Racially Biased Sentencing

In Ground I, Petitioner argues that his sentence violated his right to due process and equal protection because it was grossly disproportionate to his offenses and was based on racial bias.

The Court first considers Petitioner's allegation that his sentence was grossly disproportionate to his offense. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (citation and quotation marks omitted). Accordingly, "[s]uccessful challenges to the proportionality of particular sentences are exceedingly rare." *United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007) (quotation marks omitted). "A sentence within the statutory limits is generally not subject to Eighth Amendment review." *United States v. Atteberry*, 447 F.3d 562, 565 (8th Cir. 2006) (quotation marks omitted).

Petitioner acknowledges that his sentence was within the statutory range of punishment for his offenses. He offers no authority to suggest that his sentence was grossly disproportionate

to his offense. Thus, the motion court's denial of this aspect of the claim was not contrary to any clearly established federal law.

To the extent that Petitioner is also claiming that his sentence was motivated by racial bias, his claim is completely without merit. As the motion court pointed out, Petitioner has alleged no facts beyond his speculation to support this claim. Nothing in the sentencing hearing transcript or elsewhere in the record in any way suggests that the sentencing judge had any discriminatory animus toward Petitioner. Thus, this aspect of the claim is without merit as well.

For the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground I will be denied.

### 6. Ground J: Failure to Disclose Criminal Records of Potential Witnesses

In Ground J, Petitioner claims that the state court violated his right to due process by failing to disclose the criminal records of several potential witnesses. The motion court considered this claim and rejected it on the merits.

As the motion court noted, Petitioner offers nothing other than speculation that the potential witnesses had criminal records. Moreover, even assuming that they did and that those criminal records could have been used for impeachment purposes, there was no constitutional violation. Although the government is generally obligated to disclose information that could be used to impeach government witnesses before trial, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz,* 536 U.S. 622, 633 (2002).

For the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and Ground J will be denied.

### 7. Ground K: Denial of Request to Conduct Depositions of Several Witnesses

In Ground K, Petitioner alleges that the trial court violated his right to represent himself and his right to confront witnesses when it denied his request to take depositions of the state's witnesses. The motion court considered this claim and rejected it on the merits.

"There is no general constitutional right to discovery in a criminal case." *Weatherford*, 429 U.S. at 559; *see also Wardius v. Oregon*, 412 U.S. 470, 474 (1973) (noting that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded"). The United States Supreme Court has not established a constitutional right for a criminal defendant to conduct depositions. *See Rice v. Wallace*, No. 4:11CV00319 SNLJ, 2014 WL 752529, at *33 (E.D. Mo. Feb. 25, 2014) ("[T]he United States Supreme Court has not addressed a contention that a criminal defendant has a constitutional right to depose victims . . . Rather, any right to depose witnesses in a Missouri criminal prosecution is provided through state authority."). To the extent that Petitioner is arguing that his right to depose witnesses under Missouri law was violated, such a claim is not cognizable in this Court. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas relief does not lie for errors of state law.") (quotation marks omitted); *Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas.").

For the above reasons, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Ground K will be denied.

### 8. Ground L: Consideration of Erroneous Information in Pre-Sentence Investigation Report

In Ground L, Petitioner argues that the trial court improperly considered erroneous information contained in a Sentence Assessment Report submitted by probation officers without

allowing Petitioner the opportunity to confront and cross-examine the probation officers. The motion court denied this claim on the merits.

"[T]here is no constitutional right to confront witnesses during sentencing." *United States v. Jokhoo*, 806 F.3d 1137, 1141 (8th Cir. 2015) (citing *United States v. Brown*, 430 F.3d 942, 943-44 (8th Cir. 2005)). Other than the right to confrontation, Petitioner does not identify any specific constitutional rights that were violated. Petitioner received the Sentence Assessment Report before the sentencing hearing, was given the opportunity to state his objections to it, and did so at the hearing. Resp't Ex. To the extent that his assertion is simply that the information contained in the report was inaccurate, that does not give rise to a claim cognizable on federal habeas review.

In light of the above, the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Ground L will be denied.

### 9. Ground M: Denial of Request to Withdraw Application for Change of Judge

In Ground M, Petitioner argues that the trial court erred by denying his request to withdraw his application for change of judge. The motion court considered this claim on the merits and rejected it, finding no authority that would have permitted Petitioner to withdraw a previous motion for change of judge and finding that Petitioner had not alleged facts to show that the change of judge had any impact on the voluntariness of his plea.

Petitioner has not identified any constitutional right that was violated when the state court denied his request to withdraw his application for a change of judge. The rules governing assignment of judges to cases, when a motion for change of judge can be granted, and when a

motion can be withdrawn are matters of state law. *See Prince v. Bowersox*, No. 14-0134-CV-W-HFS-P, 2014 WL 4954084, at *16 (W.D. Mo. Oct. 2, 2014) (claim that post-conviction motion court erred in denying motion for change of judge was not cognizable in federal habeas corpus review); *Rulo v. Prudden*, No. 4:10-CV-416 (CEJ), 2013 WL 363219, at *3 (E.D. Mo. Jan. 30, 2013) (petitioner's argument that he was entitled to a change of judge "is a state law claim and may not be reviewed by a federal habeas court").

Because Ground M is not cognizable, it will be denied.

### 10. Ground 14

In Ground 14, Petitioner argues that Missouri's Truth-in-Sentencing Law, Mo. Rev. Stat. § 558.019, was not properly adopted under the "single subject" provision of the Missouri Constitution. This claim alleges only a violation of state law and therefore is not cognizable on federal habeas review. Therefore, Ground 14 will be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2016.